

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/31/2018

| | | |
|---|---|---|
| IN RE: § | | |
| GREGORY ALLEN LUBOJACKY, *et al* § | CASE NO: 17-30599 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| BRINSON BR ENTERPRISES, INC. § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 17-03236 | |
| § | | |
| GREGORY ALLEN LUBOJACKY, *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

Brinson Enterprises, Inc. filed a state court lawsuit against Gregory Lubojacky and GTBE Endeavors, Inc., alleging breach of contract, fraud, fraudulent inducement, fraud by nondisclosure, negligent misrepresentation, and declaratory judgment.  (ECF No. 1 at 1). Gregory and Teena Lubojacky subsequently filed for chapter 7 bankruptcy on February 2, 2017, leading Brinson to remove its state court lawsuit and file an adversary proceeding in this Court against the Lubojackys.  (ECF No. 1 at 2).

The Court issued a scheduling order in this adversary proceeding, which established December 29, 2017 as the deadline for the parties to amend pleadings.  (ECF No. 26).  On April 6, 2018, Brinson filed a motion for leave to amend its pleading after the deadline, alleging that newly discovered information justified a post-deadline amendment.  (ECF No. 41 at 4).  The Lubojackys opposed this motion, claiming that Brinson's requested relief failed to meet the standards under Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4).  (ECF No. 47 at 2).

Brinson's motion for leave to amend is granted.

**Background**

This dispute arises from a business deal gone awry. Brinson Enterprises, Inc. owned and operated a franchise of Homewatch International which provided the elderly with in-home care services. (ECF No. 35 at 3). Greg and Teena Lubojacky entered into an agreement with Brinson which allowed the Lubojackys to finance the purchase of the Homewatch franchise from Brinson. (ECF No. 35 at 3).

As the parties negotiated the purchase of Homewatch, the Lubojackys claimed to own a Promissory Note (the "Landscaping Note") for $390,000.00 which they offered to pledge to Brinson as collateral for the debts GTBE would incur in the sale. (ECF No. 35 at 4). The Landscaping Note arose from the sale of a prior business the Lubojackys owned. (ECF No. 35 at 4). The Lubojackys claimed the promissory note was owed to them from the prior sale of a landscaping business and payable on demand. (ECF No. 35 at 4). This Landscaping Note is the source of the dispute between the parties. (*See generally* ECF No. 35).

The parties agreed to a sales price of $750,000.00 for the Homewatch Franchise. (ECF No. 35 at 4). The terms of the Asset Purchase Agreement between the parties required the following: the Lubojackys would form GTBE Enterprises, Inc. for the purpose of purchasing Homewatch; Brinson would then provide GTBE with an initial loan of $50,000.00 (Capitalization Loan) for working capital; GTBE would execute a promissory note for $562,000.00 in Brinson's favor (the "Homewatch Note"). (ECF No. 35 at 4). The Landscaping Note served as collateral for Brinson's $562,000.00 Homewatch Note, and the Lubojackys assigned a security interest in the right to collect the $390,000.00 due under the Landscaping Note to Brinson. (ECF No. 35-3 at 1). Brinson alleges that when it agreed to allow the Landscaping Note as collateral, it was unaware of any dispute regarding the Landscaping Note.

2 / 9

The focus of Brinson's dispute in this case centers on the fact that the Lubojackys allegedly hid disputes about the Landscaping Note from Brinson and that the Lubojackys made false statements to Brinson about the Landscaping Note. (*See generally* ECF No. 35).

Gregory and Teena Lubojacky both signed a personal guarantee for the Homewatch Note and Capitalization Loan; the terms of security agreement required the Lubojackys to obtain approval from Brinson before modifying the Landscaping Note. (ECF No. 35-4). The sale of the Homewatch franchise closed on December 6, 2013.

As the maturity date of the Homewatch Note approached, the Lubojackys advised Brinson they were experiencing financial difficulties and were attempting to find alternative financing to address their struggles. (ECF No. 35 at 5). The parties agreed to extend the maturity date of the Homewatch Note to provide the Lubojackys with time to locate alternative financing. (ECF No. 35 at 5). This led to two separate amendments to the terms of the Homewatch Note and Capitalization Loan in June 2016. (ECF No. 35 at 5). The final amendment also altered Brinson's interest in the Landscaping Note to allow Brinson to collect on the proceeds from the Landscaping Note whether or not the Lubojackys defaulted on their payment obligations. (ECF No. 35 at 6).

Beginning in December 2015, Brinson requested updates from the Lubojackys regarding efforts made to collect on the Landscaping Note. (ECF No. 35 at 6). According to Brinson, the Lubojackys claimed to have initiated demands for payment and were contemplating litigation. (ECF No. 35 at 6). However, it was later revealed that the Lubojackys had already filed suit several months prior to collect the amounts due under the Landscaping Note. (ECF No. 35 at 6).

Brinson made a second request regarding the collection status of the Landscaping Note in October 2016. (ECF No. 35 at 7). At this time, the Lubojackys informed Brinson that they had

reached a settlement whereby the Note would be paid in eight monthly installments totaling $100,000.00 beginning in October 2016. (ECF No. 35 at 7). Brinson alleges that this settlement violates the portion of the security agreement which required its consent before Lubojacky altered the terms of the Landscaping Note. (ECF No. 35 at 7).

Brinson demanded that the Lubojackys remit the settlement payments under the amended assignment of the Landscaping Note. (ECF No. 35 at 8). According to Brinson, the Lubojackys refused to pay the settlement money owed and instead admitted to utilizing the payments to fund their own business. (ECF No. 35 at 8).

Brinson then filed a state court lawsuit which sought to enjoin the further payment of settlement proceeds to the Lubojackys and recovery for Brinson's damages. (ECF No. 35 at 9). During the pendency of the state court lawsuit, Brinson claims to have obtained information demonstrating that the Lubojackys made material misrepresentations regarding the terms of the settlement agreement. Brinson also alleges that it discovered the Lubojackys' interest in the Landscaping Note was impaired because the note's maker alleged the right to offset its obligations to account for amounts the Lubojackys owed to the Department of Labor. (ECF No. 35 at 9).

Before Brinson's state court suit could proceed on the merits, the Lubojackys filed for chapter 7 bankruptcy. (ECF No. 1 at 2). Brinson subsequently removed its state court suit into an adversary proceeding in the Lubojacks' bankruptcy case. (ECF No. 1). Brinson challenges the dischargeability of the debts the Lubojackys owe, alleging that these misrepresentations regarding the status and amounts owed under the Landscaping Note constitute fraud that induced Brinson to proceed with the sale of Homewatch without intending to pay any proceeds from the Landscaping Note to Brinson. (ECF No. 35 at 10–14).

The present dispute concerns Brinson's motion for leave to file an amended pleading. (ECF No. 41).  Brinson claims to have obtained new information regarding a Personal Financial Statement which Gregory and Teena Lubojacky provided Brinson during the negotiation of the Homewatch sale.  (ECF No. 41 at 3).  The Financial Statement listed all of the Lubojackys' assets, liabilities, and contingent liabilities at the time, but omitted approximately $84,000.00 the Lubojackys allegedly owed to Department of Labor.  (ECF No. 41 at 3–4).  Brinson claims that if the debt owed to the Department of Labor was disclosed, they would not have entered into the transaction with the Lubojackys.  (ECF No. 41 at 3).  Consequently, Brinson seeks to amend its pleading and add a cause of action under 11 U.S.C. § 523(a)(2)(B).  (ECF No. 41 at 5–6).  The Lubojackys oppose this relief, claiming Brinson has failed to demonstrate adequate cause to amend under Federal Rule of Civil Procedure 16(b)(4).  (ECF No. 47 at 2).

On May 17, 2018, the Court held a hearing regarding this matter, and initially denied Brinson's motion without prejudice.  Brinson subsequently re-filed its motion, urging the Court to reconsider its ruling.  The Court held a second hearing on June 28, 2018.  At the conclusion of this hearing, the Court held that Brinson knew a material omission existed in the Personal Financial Statement in sufficient time to amend; however, Brinson subsequently learned that the debt owed to the Department of Labor was not contingent but an actual liability.  (ECF No. 71 at 104).  The Court requested additional briefing regarding the narrow issue of whether leave to amend was appropriate when Brinson knew the Lubojackys' Personal Financial Statement was false prior to the pleading deadline but subsequently discovered another material falsity after the pleading deadline.  (ECF No. 71 at 104).

**Jurisdiction**

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

**Analysis**

Courts should freely grant leave to amend pleadings; however, this is not an unqualified right. *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (quoting *Nevels v. Ford Motor Co.*, 439 F.3d 251, 257 (5th Cir. 1971)).  Federal Rule of Civil Procedure 16(b) governs amendments to pleadings after a scheduling order deadline has expired and states: "A schedule may be modified only for good cause and with the judge's consent."  *S&W Enter., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536–37 (5th Cir. 2003).

To determine whether good cause exists, courts examine four factors: (i) the movant's explanation for its failure to timely amend; (ii) the importance of the amendment; (iii) prejudice to the opposing party if the amendment is allowed; and (iv) whether a continuance may cure such prejudice.  *Id.* at 536.

*Movant's Explanation*

The first factor the Court considers weighs the movant's explanation for its failure to timely amend.  *Id.*  Brinson purports that the Department of Labor audits, which gave rise to this undisclosed liability, were unknown until after the pleading deadline had passed. (ECF No. 53 at 5).  Specifically, the Brinson claims to have learned of these facts after obtaining documents from a third party involved in the Department of Labor audits and during Teena Lubojacky's deposition. (ECF No. 53 at 5).

Brinson's argument is supported by its motion to compel the production of documents related to the Department of Labor audits and the Lubojackys' Personal Financial Statement. Beginning in January 2018, Brinson sought to obtain this information through discovery but was unable to because of the Lubojackys' objections. (ECF No. 42 at 3). Eventually, this resulted in Brinson filing a motion to compel, which the Court granted on May 17, 2018. (ECF No. 63 at 15). Without access to this information prior to the pleading amendment deadline, Brinson could not have known it was able to plead a cause of action under 11 U.S.C. § 523(a)(2)(B).

The Lubojackys respond that Brinson had some knowledge of contingent liability related to the Personal Financial Statement before the pleading deadline passed and should have plead a claim under § 523(a)(2)(B) as a result. (ECF No. 74 at 4). However, this argument fails to recognize the impact the newly obtained information has on a case. The Personal Financial Statement the Lubojackys' presented did not disclose any contingent liability. (ECF No. 41 at 3). Even if Brinson properly evaluated the subsequently discovered information as the Lubojackys suggest, this would add at most $20,000.00 of contingent liability. (ECF No. 73 at 3). Both of these scenarios present a different financial picture than an actual $70,000.00 non-contingent liability. Ultimately the decision of which claims to pursue is Brinson's and without access to the necessary information, Brinson was unable to make an informed decision until after the pleading deadline had passed.

*Importance of the Amendment*

The second factor to consider is the importance of the amendment. *S&W Enter.*, 315 F.3d 533, at 536. The information Brinson obtained allegedly increased the Lubojackys' potential liabilities by $50,000.00. (ECF No. 73 at 3). As a result of this omission from the Personal Financial Statement, Brinson seeks to add a new cause of action to its complaint. (ECF

No. 73 at 3). If allowed in an amendment and established at trial, these are material facts which provide Brinson with a new route to recovery, weighing in favor of allowing the post-deadline amendment.

### Prejudice to the Opposing Party

Courts must also weigh the prejudice to the opposing party when determining whether to allow a post-deadline amendment. *S&W Enter.,* 315 F.3d 533, at 536. The Lubojackys claim that they will experience significant prejudice if the amendment is allowed because of undue delay, additional required discovery, and prejudice to their trial strategy. (ECF No. 74 at 5).

It is true that an amended pleading at this stage will delay the trial date and force the Lubojackys to contend with a new cause of action. However, part of Brinson's difficulty in obtaining this information stems from the Lubojackys' delays during the discovery process which ultimately forced Brinson to file its motion to compel. (ECF No. 42). The Lubojackys' improper objections and failure to produce the required documents in a timely fashion without Court intervention contributed in part to the delay of which they now complain. (ECF No. 63 at 15). Accordingly, while allowing the amendment will prejudice the Lubojackys, the Lubojackys' own contribution to this delay outweighs any prejudice they may face.

### Curing Prejudice Through a Continuance

The final factor examines whether the prejudice to the opposing party may be cured through a continuance. Although the Lubojackys allege prejudice if the amendment is allowed, they fail to explain how they will remain prejudiced if the trial date is continued. (*See* ECF No. 74 at 5).

A continuance of the trial date would allow the parties additional time to conduct limited and expedited discovery and reformulate necessary trial strategies to contend with the newly pled

causes of action. Additionally, the time table the Court established for the trial date in its amended scheduling order had already passed on June 28. (ECF No. 38 at 2). A continuance before the trial date will occur, whether or not the Brinson's motion for leave to amend is granted. With no current scheduled trial date, the parties have an opportunity to address the possible prejudice to the Lubojackys and provide for an adequate continuance to cure the Lubojackys' concerns. Accordingly, this factor also weighs in favor of granting the motion for leave to amend.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **August 31, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE